UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
MCALLEN DIVISION

| | |
|---|---|
| ESTELLA MARTINEZ, *et al*, § | |
| § | |
| Plaintiffs, § | |
| VS. § | CIVIL ACTION NO. 7:17-CV-309 |
| § | |
| WALGREEN COMPANY, § | |
| § | |
| Defendant. § | |

# OPINION

The Court now considers Walgreen Company's ("Defendant") motion for summary judgment[1] and the response brought by Estella Martinez, Rogelio Martinez and Jamal Saih—individually, and as sole heirs of the Estate of Claudia Martinez, deceased—as well as Olivia Longoria and Rogelio Longoria (collectively "Plaintiffs").[2] After duly considering the record and relevant authorities, the Court **GRANTS** the motion.

## I. BACKGROUND

On August 17, 2015, a pharmacy operated by Defendant allegedly dispensed to 85-year-old Elias Gamboa Mesa ("Mr. Gamboa") another customer's prescription.[3] This medication, glyburide metformin, can expose an elderly patient to a risk of hypoglycemia.[4] Hypoglycemia can cause anxiety, dizziness, blurred vision, and difficulty thinking, among other symptoms.[5]

On September 1, 2015, Mr. Gamboa was driving on Trenton road in McAllen, Texas when he rear-ended the vehicle of Olivia Longoria and her husband, Rogelio.[6] Mr. Gamboa

---

[1] Dkt. No. 13.
[2] Dkt. No. 16.
[3] Dkt. No. 16 p. 5; *See* Dkt. Nos. 16-1, 16-2.
[4] Dkt. No. 16 p. 5; Dkt No. 16-2 p. 4.
[5] Dkt No. 16-2 p. 4.
[6] Dkt. No. 1 p. 3.

continued driving and struck Claudia Martinez's ("Mrs. Martinez") vehicle head-on.[7] Mr. Gamboa then drove into an intersection where he struck three other vehicles.[8] Both Mrs. Martinez and Mr. Gamboa died the next day.[9] Plaintiffs allege that Mr. Gamboa was impaired at the time of the accident because the glyburide metformin caused him to experience hypoglycemia.[10]

On December 22, 2016, Jorge Gamboa, the son of Mr. Gamboa, on behalf of the beneficiaries of Mr. Gamboa, filed a case (hereinafter *Gamboa I*) on these facts in state court.[11] *Gamboa I* was subsequently removed to this Court.[12] On August 7, 2017 Plaintiffs filed a motion to intervene.[13] Jorge Gamboa, on behalf of the beneficiaries of Mr. Gamboa, settled with Defendant and filed a stipulation of dismissal.[14] The stipulation stated that the dismissal did not impact the claims between Defendant and Plaintiffs.[15] The Court in *Gamboa I* denied Plaintiffs' motion to intervene and dismissed Jorge Gamboa's claims with prejudice but noted that a stipulation of dismissal is not adjudication on the merits and thus the stipulation had no preclusive effect on Plaintiffs' subsequent case against Defendants.[16]

On August 15, 2017, shortly after filing their motion to intervene in *Gamboa I,* Plaintiffs filed this case.[17] Plaintiffs allege in their complaint that Defendant "breached its duty by negligently dispensing medication to Mr. Gamboa that was prescribed for another patient" and that Plaintiffs' damages were "actually and proximately caused by the negligence and gross

---

[7] *Id.*
[8] *Id.*
[9] *Id.*
[10] *See* Dkt. No. 16 p. 1, 5; Dkt. No. 16-2.
[11] *See Gamboa v. Walgreens,* No. 17-cv-0026, S.D. Tex. McAllen Div.
[12] *Id.* Dkt. No. 1.
[13] *Id. See* Dkt. No. 12.
[14] *Gamboa I, see* Dkt. No. 15.
[15] *Id.* p. 3, ¶ 10 ("This dismissal does not affect the claims or this case as between Intervenors and Defendant.").
[16] *Id. See* Dkt. No. 16.
[17] Dkt. No. 1.

negligence" of Defendant.[18] Thus, Plaintiffs are clearly suing based on a theory of common-law negligence. Defendant subsequently filed the instant motion for summary judgment.[19] Plaintiffs filed a response,[20] and Defendant filed a reply.[21] The Court now turns to its analysis.

## II. LEGAL STANDARD

Under Federal Rule of Civil Procedure ("Rule") 56, summary judgment is proper when there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[22] In a motion for summary judgment, the movant bears the initial burden of showing the absence of a genuine issue of material fact.[23] The burden then shifts to the non-movant to demonstrate the existence of a genuine issue of material fact.[24] "A fact is 'material' if its resolution could affect the outcome of the action,"[25] while a "genuine" dispute is present "only if a reasonable jury could return a verdict for the non-movant."[26] As a result, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."[27] "Although this is an exacting standard, summary judgment is appropriate where the only issue before the court is a pure question of law."[28] Such is the case here.

As to the question of law, because federal jurisdiction is invoked on the basis of diversity of citizenship,[29] this Court, *Erie*-bound, must adhere to grounds of relief authorized by the state

---

[18] *Id.* at pp. 3–4.
[19] Dkt. No. 13.
[20] Dkt. No. 16.
[21] Dkt. No. 17.
[22] Fed. R. Civ. P. 56(a).
[23] *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).
[24] *See Celotex Corp.*, 477 U.S. at 323.
[25] *Burrell v. Dr. Pepper/Seven UP Bottling Grp.*, Inc., 482 F.3d 408, 411 (5th Cir. 2007) (internal quotation marks and citation omitted).
[26] *Fordoche, Inc. v. Texaco, Inc.*, 463 F.3d 388, 392 (5th Cir. 2006) (citation omitted).
[27] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).
[28] *Sheline v. Dun & Bradstreet Corp.*, 948 F.2d 174, 176 (5th Cir. 1991).
[29] *See* Dkt. No. 1 p. 5.

law of Texas.[30] Absent a decision by a state's highest tribunal, the decisions by Texas courts of appeals are controlling "unless [the Court] is convinced by other persuasive data that the highest court of the state would decide otherwise."[31]

### III. ANALYSIS

Defendant moves for summary judgment in regards to Plaintiffs' claims of negligence on the ground that pharmacists do not have a duty to non-patients.[32] Plaintiffs respond that whether pharmacists have a duty is unclear under Texas law and urge this Court to find such a duty.[33] Plaintiffs also raise additional arguments in an attempt to defeat the motion for summary judgment. The Court will first consider the negligence question and then address the additional arguments raised by Plaintiffs.

#### A. Negligence

Under Texas law, to establish negligence, a party must establish a duty, a breach of that duty, and damages proximately caused by the breach.[34] Thus, in a negligence case, whether the defendant owes a legal duty to the plaintiffs is a "threshold question."[35] The existence of duty for negligence claims is a question of law for the court to decide from the facts surrounding the occurrence in question.[36] If there is no duty, there can be no negligence liability.[37]

In Texas, pharmacists are considered health-care providers and owe their customers a duty of care.[38] In filling and refilling prescriptions, pharmacists are required to exercise the high

---

[30] *See Exxon Co. U.S.A, Div. of Exxon Corp. v. Banque De Paris Et Des Pays-Bas*, 889 F.2d 674, 675 (5th Cir. 1989); *see also Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (U.S. 1938).
[31] *Id*. (quoting *West v. AT&T*, 311 U.S. 223, 237 (1940)) (internal quotation marks omitted).
[32] Dkt. No. 13 p. 4.
[33] Dkt. No. 16 p. 3.
[34] *P.A.M. Transp., Inc. v. Stevens Transp., Inc.*, No. 05-12-01031-CV, 2013 Tex. App. LEXIS 9617, at *3 (App. July 31, 2013).
[35] *Davis v. Eckerd Holdings II*, Inc., No. 05-96-01413-CV, 1999 Tex. App. LEXIS 5936, at *7 (App. Aug. 12, 1999).
[36] *Hanus v. Tex. Utils. Co.*, 71 S.W.3d 874, 880 (Tex. App. 2002).
[37] *Thapar v. Zezulka*, 994 S.W.2d 635, 637 (Tex. 1999).
[38] *Davis*, No. 05-96-01413-CV, 1999 Tex. App. LEXIS 5936, at *9.

degree of care that a very prudent and cautious person would exercise under the same or similar circumstances in that business.[39] Thus, if a pharmacist inaccurately fills a prescription it is liable to the customer for the resulting harm.[40] However, Texas courts have not recognized a common-law duty for health-care providers towards third parties for injuries that may be the result of the provider's negligence to the patient.[41] The duty between a health-care provider and a patient "originates solely through the relationship with, and flows *only* to . . . [the] patient."[42]

Nevertheless, Texas has recognized a duty for medical professionals towards third parties in very limited circumstances when the breach of a duty to the patient gives rise to a reasonably foreseeable harm to an identifiable person or class of persons as a consequence of that breach.[43] For example, in *Texas Home Management v. Peavy,* the Texas Supreme Court found that a facility that housed the mentally retarded had a duty to third-parties when a patient shot and killed a member of the public while on a weekend visit away from the facility.[44] The *Peavy* court was not "concerned with physician's duty not to negligently misdiagnose a patient."[45] Instead, the duty came from a breach of the facility's duty to control the patient.[46] The court found that because the patient had a known history of violent behavior towards the public, it was reasonably

---

[39] *Morgan v. Wal-Mart Stores, Inc.*, 30 S.W.3d 455, 461 (Tex. App. 2000).
[40] *Id.*
[41] *See e.g., Davis*, No. 05-96-01413-CV, 1999 Tex. App. LEXIS 5936, at * 14 (concluding that a district court did not err in finding that a pharmacist did not owe a duty of care to the parents of an infant negligently provided an overdose of medication); *Krishnan v. Sepulveda*, 916 S.W.2d 478, 482 (Tex. 1995)(finding no third-party duty to a husband for the negligent care of his wife that resulted in the loss a fetus); *Bird v. W.C.W.*, 868 S.W.2d 767, 772 (Tex. 1994)(finding no duty to third parties for mental health providers as the result of the negligent diagnosis of a child).
[42] *Van Horn v. Chambers,* 970 S.W.2d 542, 547 (Tex. 1998) (emphasis added).
[43] *See Tex. Home Mgmt. v. Peavy,* 89 S.W.3d 30, 36 (Tex. 2002) ("'There is neither a legal nor moral obligation to guard against that which cannot be foreseen . . . .'") (quoting *Houston Lighting & Power Co. v. Brooks*, 161 Tex. 32, 336 S.W.2d 603, 606, 3 Tex. Sup. Ct. J. 387 (Tex. 1960).
[44] *Id.* at 34–35.
[45] *Id.* at 35–36.
[46] *Id.*

foreseeable that harm to the public would result from a breach of the facility's duty to control the patient and therefore the facility owed a duty to a specific class, in this case, the public.[47]

A duty to third parties can also arise from a breach of a duty for a physician to warn a patient about the possible side effects of prescription medication. For example, in *Gooden v. Tips,* a Texas Court of Appeals found a limited duty to third persons arose when a physician failed to warn a patient who had a known history of drug abuse not to drive while under the influence of Quaaludes and the patient then drove and injured third party motorists.[48] The prescribing doctor in *Gooden* had a long history with the patient and knew of the patient's history of drug abuse; thus, the breach of the duty to warn resulted in a reasonably foreseeable harmful consequence to a specific class: other drivers on the road.[49] However, Texas courts have subsequently limited the duty to warn and found that physicians had no duty to warn epileptic patients not to drive,[50] mental-health professionals had no duty to warn third parties about specific threats,[51] and pharmacists had no duty to warn about the potential side-effects of medication.[52]

The question here is: Under Texas law does a pharmacist owe a duty to unconnected third parties for the negligent prescription of medication? The Court does not find such a duty here. Defendant plainly had a duty to Mr. Gamboa to provide the high degree of care expected from a reasonably prudent pharmacist and allegedly negligently breached that duty by providing him the incorrect medication. Plaintiffs' attempt to extend that duty to themselves fails. Plaintiffs argue that a duty was created because it was foreseeable that an accident would result from providing

---

[47] *Id.* at 38.
[48] *Gooden v. Tips* 651 S.W.2d 364, 370 (Tex. App. 1983).
[49] *Id.* at 369.
[50] *Praesel v. Johnson,* 967 S.W.2d 391, 398 (Tex. 1998).
[51] *Thapar*, 994 S.W.2d at 637.
[52] *Morgan*, 30 S.W.3d at 461.

Mr. Gamboa the incorrect medication. However, in order for a third-party duty to arise, the breach of the health-care provider's duty to the patient must create a *reasonably foreseeable* consequence to an *identifiable* party or class. Here, Plaintiffs are not identifiable third parties. The facts alleged indicate that Mr. Gamboa was an ordinary pharmacy customer, with no relationship to Plaintiffs. Similarly, Plaintiffs had no relationship with Defendant. Therefore the duty allegedly breached was the general duty of a pharmacist to its customers. Defendant had no duty to control Mr. Gamboa's behavior or to warn him about side effects.[53] In these circumstances, in order to find a duty to Plaintiffs, the Court would have to find that a pharmacist has a general duty to the public for negligent provision of medication. The Texas Supreme Court has never held that such a duty exists, and thus, this Court, *Eerie*-bound cannot so find now.

Plaintiffs also argue that the enactment in 2003 of a healthcare liability statute which allows for non-patients to sue health-care providers indicates that the Texas Supreme Court would or should find such a duty.[54] The statute Plaintiffs reference, Tex. Civ. Prac. & Rem. Code § 74.001, does not create any cause of action, but only provides procedural requirements for filing a medical negligence claim.[55] Thus, the cause of action must be based upon common law or some other statutory provision. Plaintiffs do not allege their cause of action arises from some statutory provision. Rather, as already noted, Plaintiffs assert a common law negligence claim. Despite the definitional terms in § 74, the Texas Supreme Court has consistently declined to find a duty for a health-care provider to the general public as a result of medical negligence. Plaintiffs

---

[53] *See Morgan*, 30 S.W.3d at 461 (no generalized duty for pharmacists to warn patients about possible side effects); *Van Horn*, 970 S.W.2d at 547 (no duty for physicians to control the conduct of patients).
[54] Dkt. No. 16 p. 15. (citing Tex Civ. Prac. & Rem. Code § 74.001 (2)). (Although § 74 was enacted in 2003, it simply recodified the Texas Medical Liability and Insurance Improvement Act, previously Tex. Rev. Civ. Stat. art. 4590i.)
[55] *See Schorp v. Baptist Mem'l Health Sys.,* 5 S.W.3d 727, 736 (Tex. App. 1999)("The purpose of article 4590i [predecessor to §74] was to address the perceived problem by the state legislature that litigants were filing unmeritorious claims against medical practitioners . . . .").

do not point to a single case to the contrary. Accordingly, this Court must adhere to the strictures of *Eerie* and refrain from making state law in the absence of persuasive data to the contrary.

Finally, Plaintiffs raise various other avenues of liability such as strict products liability or the liability that applies to firearms sales or dram shops.[56] However, Plaintiffs provide no cases indicating that these theories of liability apply to pharmacies and the Court could find no case to support this contention. These theories, thus, do not indicate the existence of a duty between Defendant and Plaintiffs.

Accordingly, this Court lacks persuasive data indicating that the Texas Supreme Court would find that pharmacies owe a duty to the general public for negligently filling a customer's prescription. Thus, Defendant owes no duty to the Plaintiffs and thus, Plaintiffs' cause of action fails as a matter of law.

However, before granting summary judgment in Defendant's favor the Court will consider Plaintiffs' additional arguments to determine if they raise any material issue of genuine fact such that summary judgment is not warranted.

### B. Negligence Per Se

Plaintiffs, in their response, argue that Defendant may have a duty under the concept of negligence per se based on an alleged violation of Texas Health and Safety Code § 483.042.[57] Defendant responds that Plaintiff did not raise this cause of action in the complaint; and even assuming negligence per se is well-pled, Defendant does not owe a duty to Plaintiffs.[58]

Under Texas law, "negligence per se is a tort concept whereby a legislatively imposed standard of conduct is adopted by the civil courts as defining the conduct of a reasonably prudent

---

[56] Dkt. No. 16 p. 22–23.
[57] Dkt. No. 16 p. 4.
[58] *See* Dkt No. 17.

person."[59] Negligence per se is not "a separate cause of action that exists independently of a common-law negligence cause of action. . . . Rather, negligence per se is merely one method of proving a breach of duty, a requisite element of any negligence cause of action."[60] Thus, negligence per se does not impose a duty; instead the violation of a statute is evidence of the breach of a duty.

As noted above, appellate courts in Texas have consistently held that health-care providers do not owe a duty to third-parties for medical negligence. Thus, the statute in question does not create a duty where none exists, and Plaintiffs' claim of negligence per se does not raise a dispute of genuine material fact such that summary judgment is not proper.

C. Learned Intermediary

Plaintiffs next argue, that the learned intermediary doctrine cannot allow Defendant to escape liability.[61] Defendant correctly responds that it did not raise this defense and thus Plaintiffs' arguments in this regard are moot.[62] The Court agrees with Defendant that this issue is moot and therefore does not address whether this doctrine would apply here.

D. Prior Settlement in *Gamboa I*

Plaintiffs' final contentions are based on the parallel case between Mr. Gamboa's son and Defendant, *Gamboa I*. First, Plaintiffs argue that because Defendant settled the claims in *Gamboa I*, Defendant cannot here challenge whether it is liable to Plaintiffs in this instant case.[63] Defendant responds that the settlement in *Gamboa I* cannot be used as admission of guilt or as evidence that it has waived any defenses or arguments in this case.[64]

---

[59] *Carter v. William Sommerville and Son, Inc.*, 584 S.W.2d 274, 278 (Tex. 1979).
[60] *Thomas v. Uzoka,* 290 S.W.3d 437, 445 (Tex. App.—Houston [14th Dist.] 2009, pet. denied).
[61] Dkt. No. 16 p. 8.
[62] Dkt. No. 17 pp. 4–5.
[63] Dkt. No. 16 pp. 29–32.
[64] Dkt. No. 17.

The Court agrees with Defendant. A settlement is not an indication of the truth of the allegations in a complaint.[65] Additionally, the stipulation of dismissal, signed by Plaintiffs, explicitly states, "This dismissal does not affect the claims or this case as between Intervenors and Defendant;"[66] and this Court's dismissal order noted that the dismissal had "no preclusive effect" on Plaintiffs' subsequent suit against Defendants.[67]

Plaintiffs also raise the possibility that Mr. Gamboa's estate could be liable to them for the actions of Mr. Gamboa, and thus if Defendant owed Plaintiffs a duty then Defendant and Mr. Gamboa's estate may be jointly and severally liable.[68] However, Mr. Gamboa's estate is not a party to this action. Therefore, whether or not Mr. Gamboa's estate could potentially be liable to Plaintiffs raises no issue for the Court in this instant motion for summary judgment.

Accordingly, based on the record before the Court and the relevant law, the Court finds Defendant met its burden of demonstrating an absence of a genuine issue of material fact and thus is entitled to summary judgment as a matter of law.

### IV. HOLDING

For the foregoing reasons, the Court **GRANTS** Defendant's motion for summary judgment.[69] Plaintiffs' negligence claims and their entire action is **DISMISSED WITH PREJUDICE**. Pursuant to Rule 58, a final judgment will issue separately.

IT IS SO ORDERED.

DONE at McAllen, Texas, this 3rd day of July, 2018.

Micaela Alvarez

---

[65] *See Burks v. XL Specialty Ins. Co.*, 534 S.W.3d 458 (Tex. App. 2015).
[66] *Gamboa I*, Dkt. No. 15 p. 3.
[67] *Id.*, Dkt. No. 16 p. 3.
[68] Dkt. No. 16 p. 31.
[69] Dkt. No. 13.

United States District Judge